Good morning, ladies and gentlemen. We're very grateful to ASU for this opportunity to hold a session of the Ninth Circuit Court of Appeals. We have three cases to argue today. Judges Hurwitz, Hawkins, and myself appreciate your being here. And so, counsel, let's begin with the Read case. May it please the Court. Yamina Chen on behalf of Jonathan Read. I'd like to try to reserve 20 minutes for rebuttal. I'd like to focus on two issues today. First, what if this court made up of... Excuse me one second, counsel. Where's our clock? I have one, but maybe you can't see it. Oh, here it is. Never mind. Go ahead. I'd like to focus on two issues today. First, whether this court may affirm the convictions based on documentary evidence obtained by the government for the first time after the verdict about a historical fact and submit it to this court on appeal. And second, whether trial counsel... So we can't take judicial notice of the fact that FCI Phoenix is on federal property? I think the district court possibly could have taken judicial notice of it, but... What's your best case for saying the Court of Appeals can't do that? All the FBIC cases, Your Honor. The court... Rule 201 is very clear that in a criminal case, a court may not take determinative judicial notice. And if the district court had taken judicial notice, he would have had to instruct the jury that it was not possible. So you would have us send it back to district court just to do that? No, I would say that the evidence was insufficient as a matter of law because the government didn't prove an element of defense. They say that it's a question of law, but it's clearly not a pure question of law because it relies on documentary evidence. They had to go to the Department of Justice and obtain these two letters that show that in 1985 and 1988, the federal government accepted jurisdiction over this land. The problem with their arguments is twofold. Legally, this court has never taken judicial notice of this kind of documentary evidence on appeal in a criminal case. And second, factually, even if those letters could have proved the FCI Phoenix was in federal land in 1985 and 1988, they say nothing about its status in 2014. Put aside the letters for a second. There's testimony at trial from a correctional officer that he works at the Federal Correctional Institution in Phoenix. And the victim, I think, says he's a federal prisoner. Yes. Couldn't a reasonable finder of fact infer from that testimony that this crime occurred under federal jurisdiction? Absolutely. It's not proof positive, but is it enough proof for a reasonable finder of fact to make a defense? Absolutely enough. Why not? Because federal prisons are not all on exclusion. They're not all on, but are it mostly? I don't know if most are on, but that's a question of facts. Sorry, it is a question of facts, but my question is, isn't that enough of a fact to get the issue to the finder of fact? I don't think so, because in all the FDIC cases, we have national banks involved. All banks are not FDIC banks. And not all prisons are on federal property. But most are. There are three types of jurisdiction. There's concurrent, exclusive, and proprietary. Some federal prisons are on proprietary jurisdiction. They basically lease the land. We know that about the FCI in Raybrook in New York. There is no federal jurisdiction for assaults that occur in that prison. There's simply no way that a jury in this case could have found that the United States has accepted legislative jurisdiction over a plot of land without any evidence of that. So let's assume for a moment that there wasn't sufficient evidence in front of the jury on this. The jury wasn't instructed on it, was it not? No. The jury was not instructed that it had to find federal jurisdiction? No. Who has to find it in a normal case, as far as you're concerned? The jury. Okay. We have a Supreme Court case that says, well, the jury is not instructed on an essential element of the crime, but it is clear that element exists. Why is that true here? Because in those cases, you look at what's clear in the record. So you look at all the evidence that came in the record, and you determine whether a jury that's properly constructed could have found the fact. But here, there was no evidence in the record. We use the word federal jurisdiction very loosely, but the statute is clear. It has elements. And one of the elements is that the federal government has accepted jurisdiction. And the federal government has not accepted jurisdiction over every plot of land where an army loses. We know that from the military cases. Banks – I'm sorry, not banks – post offices. There are many plots of – there are many federal offices that are not on federal land. And the jury had to determine that, and there was absolutely no evidence in the record. Well, there was some evidence, but you said it was insufficient. It was insufficient to – one of the elements is that the federal government had accepted jurisdiction. There was no evidence of that. It would be helpful to me if you moved on to the second point. Okay. And to me as well. As fascinating as the jurisdiction is, I – I knew that one wasn't what all these people were here to hear about. But it is dispositive, and so I didn't want to just skip over it. But turning it to whether the trial counsel's prosecution of an NGI defense over Mr. Reed's express objection requires reversal. Well, before you get into the – your preparedness field, I'd like you to work with the concept of whether McCoy v. Louisiana really is the governing case, if you will, in this. And I'd like you to discuss the difference between a confession of guilt and a defense of insanity. In what way are they alike? In what way are they different? You know what Justice Ginsburg said in the McCoy case about a confession of guilt. To what degree is a plea of insanity like that? Does Mr. Reed have a similar kind of right here? What should we do with that? A plea of not guilty by reason of insanity is like a confession of guilt, in that you generally agree that all the facts that would establish guilt have been established, but you put on an affirmative defense where you are required to – I may have done this, but I was crazy. I may have done this, but I was crazy. And not just I was crazy. There are elements that you have to prove by fair and convincing evidence to a jury, that you have a severe mental disease or defect, and that it resulted in you not being able to appreciate the wrongfulness of the jury. McCoy was facing the death penalty, right? Excuse me? McCoy was facing the death penalty. He was, yes. Your client was facing a period of incarceration, right? Right. But the principle – Isn't that a difference? Well, the principle of McCoy did not turn on whether he was facing the death penalty. In fact, Justice Ginsburg was quite clear. She talked about liberty or life. And that in either case, it's the defendant that has the prerogative to control, and she used the words, the objective of his defense. Isn't the defendant, if he's going to plead not guilty by reason of insanity, doesn't he have to not only – he has to admit that he committed the crime. As a matter of evidence, evidentiary law, a judge will not let him put on an alternative defense. I didn't do it, but if I did it, I was crazy. I'm not sure if that's quite correct evidence. Have you tried that in federal law? I'm not certain, but that's what happened in this case. I'm not sure if as a matter of law, but he's required to say, I didn't do it. He could say, I didn't do it, but if I did it, I was crazy. But that's not what happened in this case. What happened in this case is the lawyer said, we're not going to be contesting the who, what, why, where, or when. We're going to be telling you that he is insane. He is schizophrenic. He has a mental disease or defect, and he is not responsible. Let me – Mr. Kozinets will make the argument better than I, but as I understand the government's argument, it's that, well, perhaps in some cases you have the right to tell your lawyer not to put on an insanity defense. But here the defense that your client wanted to put on was that he was possessed by demons. And that that's really the same defense. And what his able lawyer did was just phrase it in a way and present the kind of evidence that fitted in the correct legal box. I have three answers to that. The first is, that's the government's characterization of the defense. And I may have fallen into this shorthand in my own brief, but when Mr. Reed was asked, why are you not guilty, what defense will you put on, he said, my civil rights have been violated. I've been tied in with so many other people that I have nothing to do with, incarcerated my baby, et cetera. He had a defense that I didn't understand. But second – No, no, that's good. No, no, that's good. He didn't say, I want to be mentally non-responsible by reason of demonization. But second, even if that were an accurate description of the defense, it still wouldn't constitute an NGI defense. There's no requirement that he would have a cert that he had a mental disease that would be effective. What's clear in this case is that's what he did not want to do. Is that any different than the defense that McCoy wanted to put on? Is it different from the defense that Mr. Reed put on? In kind. Yes, it is different in kind. And I'm not saying that McCoy is 100% binding, but I am saying that the principle that McCoy is defending his control, the objection to his control – It's not different in quality. No. They're both awful. They're both awful. But the NGI defense was sort of awful also, right? I mean, because it required him to prove by clear and convincing evidence things that he did not even – his lawyer didn't have the facts to prove that he was NGI by clear and convincing evidence. And probably most importantly, if he had succeeded, if his lawyer had succeeded, he wouldn't have gone home. Mr. Reed would not have gone home. He would have been required to be mandatorily, involuntarily committed indefinitely. And that really indicates this is a question about the objective of the defense. Tell me why we shouldn't conclude that your client was just gaming the system. It didn't appear that he was gaming the system at all. Well, at least one mental health expert said this guy knows exactly what's going on. I think the act was premeditated. He made the shiv out of part of his bed stand. He and his cellmate had had disagreements over time. He stabbed his cellmate 10 times. Which is exactly why you shouldn't have put on NGI defense, right? Because an NGI defense does not succeed in gaming the system. The problem with criticizing the defense in this, that doesn't get you very far. The defense in all circumstances, at least so far as your client is concerned, is awful. He said this was done in self-defense. He stabs his cellmate because his civil rights are being violated and because he has demonic possession. The truth is he's got no good defense. He has no good defense. So I wouldn't criticize the executive defense. I think if you were the lawyer for him and he gave you free reign, that's the one you would judge. And that's what's key, if he gave you free reign. Let me ask you this, counsel. Does the client have the right to insist on making a defense that's legally barred by law or statute? No. So in this case, the trial judge made it pretty clear that the possession by demonic demons was not a legitimate defense and could not fly. That's right. So how do we deal with that in this case? Well, Mr. Reed said that's fine, scratch that. So when the judge said, well, I'm not going to let you call Dr. Walker to come in and say that other people were demonically possessed also, the client didn't say, oh, well, then you're in big trouble. He said, OK, well, let's scratch that. What this client didn't want was an NGI defense. And we cannot force the client to declare himself insane. If he had been allowed to put on the defense that he wanted, how would the judge have instructed the jury? We really can't say what defense he would have put on if he had wanted. That's why this is structural error. We have no idea what would have happened. And frankly, if the judge had said to him, I think you need a lawyer. I'm going to reappoint Mr. Williams. But let me be clear with both of you, both you and Mr. Williams. The Sixth Amendment protects your autonomy right to control your defense. And so Mr. Williams can't put on any kind of crazy defense that has no basis in law, but he will not put an NGI defense on over your objection. I think Mr. Reed would have accepted that. I think what the district court was telling him, you're crazy not to put on an insanity defense. He might have been saying that. But if you were saying he wasn't competent, then you should have just terminated proceedings and restored competency. What he was saying is that you're competent to proceed, but you are not competent to determine the objective of your defense. And the Supreme Court tells us that that's structural error. Do you want to save any of your time? Yes. Okay. We'll hear from the government. Good morning. Good morning. May it please the Court, I'm Peter Kosnetz, representative of the United States. The defendant's conviction should be affirmed for three basic reasons. First, it's indisputable that the crime occurred at a place of federal jurisdiction. Second, the district court— It would have been nice if the government had put on that proof at trial. Right? That would be— The proof that it found afterwards. That unquestionably is the preferable approach. And because of this case, we're keenly aware of that issue. The message has been received that that is ordinarily what ought to have occurred. It's on the checklist. Absolutely. So why isn't this like the FDIC cases? You try a bank robbery case. You establish federal jurisdiction. You've got to show that it's an FDIC bank. You forget to put on the FDIC evidence. Can you show up at the Court of Appeals with a certificate issued by the FDIC that says the bank is covered? So those cases are very different because FDIC— Because you lost them. Well, FDIC— Why ask me? No, no. They're very different for a couple of reasons. First, the kind of evidence that goes to FDIC insurance is highly variable, and it applies to— I know. I've tried these cases as a defense lawyer. Somebody walks in with a certificate, or they say to the manager of the bank, Are you covered by the FDIC? And he says, Yes. It's exactly the same kind of proof you would put on here. Here you put on—it wouldn't be perfectly sufficient, I think, to put on the warden to say, Is your prison on federal land? So it's not hard. Why are they different? It's not hard, but banks are frequently unsold. They change the kinds of services that they provide. Sometimes they have money that's insured. Sometimes they don't. And because of the highly variable nature of commercial banking, it really isn't due to the fact that it has to be decided by the FDIC. Well, his case says the same thing is true of federal prisons. Sometimes they're on leased land. Sometimes they're on state land. Sometimes they're on federal land. Why is that the same? It's not the same because federal territorial jurisdiction, once it is established, it is fixed. It is something that doesn't change from case to case, like FDIC and insurance money, but it is a universally applicable fact that applies to all cases involving a prison. And what happened here is we have clear and indisputable evidence that the state ceded jurisdiction. We can tell that by looking at the Arizona Revised Statutes versus statute 1972. Counsel, what's your best evidence that this element of the crime was, in fact, proven? So we have multiple ways of getting there. The first is that there was trial testimony that the place of the crime was the federal prison. And from that, it can be inferred that this was the place of federal jurisdiction. Secondly, we have the jury instructions that were used. These are multiple instructions posted on this court's website. The jury has to find no reasonable doubt. Well, I asked Mr. Chen that. The jury was instructed that it had to find that this occurred in federal jurisdiction. That it occurred at FCI Phoenix. But not in federal jurisdiction. So the model jury instruction says in brackets, specified place of federal jurisdiction. The parties pulled that out by putting it in FCI Phoenix. The court adopted those instructions. There were no objections. So it can be inferred from that that the issue was uncontested. And the court was able to find it. Is this a waiver argument that essentially both sides agreed that FCI Phoenix was under federal jurisdiction? And that's why the jury was asked to find it? There is an element of waiver. But more importantly, it's an implicit finding argument that the district court implicitly found as a matter of law that this was a place of federal jurisdiction. And that goes back to the case law of Herlinus. The Dyke case, the Warren case from this court, the Redmond case, which we attached to the Rule 20HA letter recently, when this jurisdiction recognized that the place of crime is the issue that goes to the jury. But its jurisdictional status is something that can be resolved as a matter of law. Did the district judge resolve it? Well, we argue that he implicitly resolved it. So in other words, you argue that although he didn't, we should take it? Implicitly. Yes. Because of their instructions and because of their judgment on these offenses as well. This is really the overwhelming view of every circuit that has considered the issue, which is that this is an issue that is resolved by the court. But this is a criminal offense, and this is an element of the crime. It has to be proven beyond a reasonable doubt, right? How did that happen in this case? So the case law recognizes that the part that has to be proven beyond a reasonable doubt to the fact finder is the place of the crime, where the crime occurred, the locus of the crime. That was unquestionably accomplished. So do you have a case that involves an FCI or its equivalent that was on leased land that still said that the building itself, the correctional institution itself, establishes federal jurisdiction? Well, I'm not aware of a case involving leased land. This isn't a leased land case. We understand that. And you found that out later. But is it enough to simply say it's FCI Phoenix, it's a federal entity, that's enough? Ordinarily, that may be enough to infer. But we have – and first of all, the information that we provided with our motion for judicial notice, the overwhelming majority of it is stuff that is down in the federal register or state statutes, things that indisputably fall far outside the scope of the Federal Rule of Evidence 201. So there's no question that this court could take judicial notice then in 1972. Let's assume that it is a legal issue, that you put out all the facts you needed to a trial about locus, but that the district judge failed to make the legal finding. What do we do under that circumstance? Do we send it back to him to make the legal finding, do we make it ourselves, or do we enter a judgment of acquittal? Well – I know he's going to – He's certainly going to want me to enter a judgment of acquittal. In cases like this where it's really indisputably true that federal jurisdiction exists, where the issue wasn't contested and still relates to be contested up here, you have enough before you right now to affirm based on all the information from you. And that's what this court did in the Randolph case just four months ago. It's what the Second Circuit has done repeatedly in the Davis case, and they recognized that we're providing judicial notice in earlier in these laws. Well, the Fourth Circuit and the Fifth Circuit have done the same thing, taking judicial notice of these types of things on appeal. I want to ask you to switch – unless you want to talk more about this fascinating jurisdictional issue. In the normal case, just forget these facts for a second, do you agree that the defendant has the Sixth Amendment right to tell his attorney not to put on the insanity defense? There's lots of case law on this. I know your argument in part turns on the facts of this case, but I'm trying to find out whether or not you think this is an exception to the general rule or there is no general rule. Well, my position is that there shouldn't be an absolute per se rule that applies to every case. That as Justice Breyer recognized in Indiana versus Edwards, mental illness is a human right. But that's a competency issue, or the ability to – This guy was found competent, right? This guy was found competent. You wanted him to be competent. You sent him away to federal people who found him competent. So I'm asking the question, just the ordinary case, I walk in and my lawyer says, you've got a pretty crappy defense in this case, which is true of this jury. Insanity is your best shot. And I said, I'd rather take the one-in-a-thousand chance that some rogue juror will not convict me. My counsel then puts on the insanity defense. Has he violated my Sixth Amendment rights? If the defendant has no mental health issues, then I would – If he has no mental health issues, the lawyer may well have provided ineffective assistance, but that's not the question. He has violated the Sixth Amendment rights, right? If he has no mental health issues, there's – So what do we do in a case – And in that case, does it matter how crazy his defense is, the one he really wants to put on? If he has no other mental health issues, and he's not making a defense that is really insanity – Well, this guy was found competent after a series of mental health examinations. The district court went through a Feretta hearing to determine that he could in fact represent himself. So, where do we go? Okay, so really, I think the way of looking at this is to recognize that we have to go beyond Feretta or baseline competence, and we have to look at this defendant as a great early defendant, somebody who had enough – If you were going to give us the entry line to the opinion we were going to write, and we were going to write it hypothetically in the government's favor, it would say, ordinarily, a criminal defendant has the right to choose his or her own defense in the method of presenting it, except – Fill in that blank. Yes. Except in extreme unusual cases where the defendant is still suffering from severe mental health issues, and the defendant's proposed defense is so delusional or not grounded – Who makes that determination? In other words, you're saying that he has the right to avoid a defense of insanity, but if he's crazy, he can't object. Who makes the determination that he's insane so much so that he can't object to entering an insanity defense? So it's not – I mean, we talk about terms like he's crazy, he's confident. What the great early defendants recognize is that there's really – there's a middle ground, that there are some defendants, like Mr. Ruth, who have a baseline competency – Before you get there, I just want to be sure in terms of the platform. Do you agree with the general concept that the principles of McCoy v. Louisiana translate over to an insanity defense? Does it shift from a plea of guilt to a plea of insanity? No. I think it's highly dependent on the facts of the case. So – The defense of McCoy was – you can't get crazier than that. He was facing a mountain of forensic evidence that he'd killed these three people, and he wanted to put on this defense that the law enforcement were engaged in some kind of conspiracy and had invented the evidence against him. And that he was out of state at the time. Yeah. Exactly. And that he had an alibi. That was a messy defense. Well, it was messy, but it wasn't a defensive excuse. I wasn't mentally responsible because he didn't take any actions. I'm somewhat sure you know the answer to Judge Hawkins' question. You're saying it depends on the facts of the case. That's really not a legal rule. So where is the line? Okay, so McCoy deals with this enormous gap between client and lawyer. McCoy says, I was actually innocent. I wasn't anywhere near the place where the crimes occurred. The lawyer says he was guilty in his sin. There couldn't be a greater divergence of position. No, but you've already told us that in at least the Plain Canela case, the defendant has a Sixth Amendment right to tell his lawyer, I don't want you to put on an insanity defense, even if it is the only viable one. So tell me where the line is. So the line in these cases... I know you think this one falls on the other side of it and where would we draw it, but you're asking us to draw it. So where do we draw it? So what I'm asking you is not necessarily to draw a person, but instead empower the trial court judge just as Justice Breyer did in the Edwards decision to make these kind of final determinations. But you've got to have some guidance, though, some general way to cabin how this works. So we're all saying, tell us what this is. How do we cabin this thing? So there are sort of general principles that are recognized in Edwards, that are recognized even in the State v. Mean case in Vermont with the defendant in Cites, and in the Edwards case in Colorado with the defendant in Cites as a but-see proposition. And all those cases recognize that where you have a defendant who's competent to go to trial, but still has mental derangement or illness such that they can't really... they don't actually grasp all the nuances. Did the trial judge make any findings about that here? As I understand it, the trial judge said, I'm not going to let you put on your own defense because it's such a stupid defense. It shows that you're delusional, which would be true of Mr. McCoy, and almost everybody runs up in this circumstance. So even if you have a test, whatever it is, I'm still not sure I know what it is, did the trial judge in this case make any findings that would meet that test? So let me just state the test as best as I can. The test would be that in exceptional cases where you have a mentally ill defendant who's competent enough to go to trial, but not competent in designing his own defense, and if that defendant is espousing a defense that is clearly delusional or not positively grounded in reality, then the trial court should have discretion to step in and direct the presentation of a mental status defense. That's essentially the whole thing of the Hendrix case. It is a question that is explicitly reserved for the main case, and it's one that is consistent with Justice Breyer's majority opinion in Indiana v. Edwards, where he recognizes that in the front context. It sounds like the rule the government would like is if you're crazy, you have an absolute right to put on a mental health defense. But if you want to put on a really crazy defense other than mental health, you can't put it on. And we're going to take away your Faretto rights and impose upon you and your advisory lawyer, now your lawyer, to present a defense you don't want. Do I have that wrong? In balancing the interests of the individual, the defendant's rights, the timing and dignity with the proper constitutional value of ensuring the criminally accused gets a fair trial, in certain very limited circumstances, such as those that we have here, the trial judge should have the discretion to be able to step in and make that kind of decision. Your time is up. Let me ask my colleagues, if you have an additional question. I have one. Okay, go ahead. Have you ever read Catch-22? Yes. It's the best catch series. So is our defendant here like Captain Yossarin? Why was he the district court judge? Arguably, it was in Catch-22, because no matter which path he chose... And that's the problem with Faretto, which is a subject for another day. Very well. Thank you. Thank you, counsel. So, the response. You're going to give us the rule, right? You're going to lay it out beautifully for us? Beautiful. I think that I'm going to actually, for the first time, and I don't think it was in the government's brief, the government's rule is that my client was competent to be tried, but not competent to determine the objective of his defense. Well, isn't that essentially what the judge did, by saying, I'm taking away your Faretto rights? Well, he decided... Isn't that essentially Indiana v. Edwards? That's an Indiana v. Edwards thing, so I want to talk about Indiana v. Edwards, and I want to talk about Liverpool. So, let me... Why should Indiana v. Edwards be the lie that separates the absolute right from the... Indiana v. Edwards is very clear when it talked about being competent to be tried means being competent to make the important decisions with the assistance of counsel. You may not be competent to try your case, but you're still competent to make those decisions. Indiana v. Edwards did not say that once you re-appoint counsel, counsel now also gets to take away the fundamental system at the right to determine the objective... So, for example, you couldn't plead the Guilfield case? Exactly. You couldn't plead guilty. You couldn't prevent you from testifying. All of the things that you couldn't waive, you couldn't waive your rights to the jury trial... Do you take the position that if someone has been found competent to face trial, that they are likewise competent to make a personal determination whether or not to plead guilty by reason of insanity? Absolutely. And I think that that's what's clear to avoid. Because if we want to talk about gray area defendants, McCoy was clearly a gray area defendant. And yet the Supreme Court held that he still retained the right to determine the objective of his defense. And in this case, clearly, saying, I do not want to be found not guilty by reason of insanity was determining the objective of his defense. Indiana v. Edwards recognizes that. They said there's a difference between being able to assist your counsel with the assistance of counsel determining the objectives of your defense and being able to put on the trial yourself. But it doesn't say that counsel can disturb the defendant's fixed amendment right to determine the objectives. Okay. Your time is up. Let me ask my colleague an additional question. No, no. I just want to ask... I do have one other question. Okay, go ahead. Because I think we've maybe been unfair to trial counsel in this case. Trial counsel did go to the district judge and say, my professional judgment is that the only good defense is an insanity defense, but he doesn't want me to put it on. Judge, judge, I've got a problem. I'd like to... And I think it would be unfair to trial counsel. Okay. Thank you both for your arguments. Very, very helpful. As I think the folks in the audience can tell, this is a tough one. And hopefully you had an opportunity to consider what we have to decide here. So the case just argued is submitted. We thank all counsel.
judges: Hawkins, M. Smith, Hurwitz